IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JANICE G. DAVIS,<br><br>            Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>            Defendant. | Case No. 2:08-CV-357-SA<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

    Before the court is an action filed by Plaintiff, Janice G. Davis, asking the court to reverse the final agency decision denying her applications for Disability Insurance Benefits (hereafter "DIB") and Supplemental Security Income (hereafter "SSI") under Titles II and XVI of the Social Security Act.  *See* 42 U.S.C. §§ 401-403, 1381-83c.  The Administrative Law Judge (hereafter "ALJ") found that Plaintiff was not disabled because she could perform her past relevant work as an appointment clerk as generally performed in the national economy.  Plaintiff now challenges the ALJ's decision by arguing that it is legally erroneous and not supported by substantial evidence.

Having carefully considered the parties' memoranda and the complete record in this matter, the court concludes the Commissioner's decision should be affirmed.

## BACKGROUND

Plaintiff filed for DIB and SSI on September 20, 2004, alleging an inability to work since April 20, 2001. (Docket Entry #8, the certified copy of the transcript of the entire record of the administrative proceedings relating to Janice Davis (hereafter "Tr. __") 68, 87-88, 97-108, 329.)  After her applications were denied initially and upon reconsideration (Tr. 29-32, 37-39, 41-43), a hearing was held before an ALJ on June 26, 2007 (Tr. 338-404).  On August 28, 2007, the ALJ issued a decision denying Plaintiff's claim.  (Tr. 11-27.)  On March 6, 2008, the Appeals Council denied Plaintiff's request for review (Tr. 5-8), and the ALJ's decision became the Commissioner's final decision.  *See* 20 C.F.R. §§ 404.981, 416.1481.  As such, Plaintiff has exhausted her administrative remedies and the case is ripe for judicial review.  *See* 42 U.S.C. § 405(g).

On May 6, 2008, after receiving the Appeals Council's denial of her request for review, Plaintiff filed her complaint and the case was assigned to United States District Judge Tena Campbell. (File Entry #3.)  Defendant then filed his answer on August 13, 2008.  (File Entry #6.)  On August 26, 2008, the parties consented to jurisdiction by a United States Magistrate Judge, and the case was referred to United States Magistrate Judge

2

Samuel Alba pursuant to 28 U.S.C. § 636(c).  (Docket Entries #12, 14.)

On October 1, 2008, Plaintiff filed her memorandum requesting that the Commissioner's decision be reversed or remanded.  (File Entries #15, 16.)  Defendant filed his response memorandum on November 3, 2008.  (File Entry #17.)  On November 17, 2008, Plaintiff filed her reply memorandum.  (File Entry #18.)[1]

**STANDARD OF REVIEW**

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003); *accord Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "'Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'"  *Doyal*, 331 F.3d at 760 (citations omitted).  The court may "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'" *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (citation omitted).

---

[1]On February 11, 2009, the parties filed a stipulated motion, which the court granted, to redact pages 145-46 of the administrative record because they consist of a medical record of an individual other than Plaintiff.  (Docket Entries #19, 20.)

The court's review also extends to determining whether the Commissioner applied the correct legal standards. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  Besides the lack of substantial evidence, reversal may be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

**ANALYSIS**

Plaintiff challenges the ALJ's decision by arguing it is not supported by substantial evidence and it is legally erroneous. Specifically, Plaintiff argues the ALJ made the following three errors of law at step four of the sequential evaluation analysis: (1) the ALJ did not follow the Tenth Circuit's three-step evaluation process to determine if Plaintiff can perform her past work; (2) the ALJ's finding that Plaintiff could mentally return to her past work as an appointment setter is not supported by substantial evidence; (3) and the ALJ's finding that Plaintiff could physically return to her past work as an appointment setter is not supported by substantial evidence.  The court examines each of these arguments in turn.

### A. Three-Step Evaluation Process

The court first addresses Plaintiff's argument that the ALJ erred in failing to follow the Tenth Circuit's three-step evaluation process to determine if Plaintiff can perform her past work.

As Plaintiff explains, at step four of the sequential evaluation process, Tenth Circuit law requires an ALJ to follow a three-phase evaluation process before determining that a claimant is capable of returning to his or her past work. *See Winfrey v. Chater*, 92 F.3d 1017, 1023-24 (10th Cir. 1996). At phase one, the ALJ should first assess the nature and extent of the claimant's physical limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. *See* 20 C.F.R. § 404.1545(b). Plaintiff concedes that the ALJ complied with step one of the three-step evaluation process. (Docket Entry #18, at 2 ("Davis does not dispute that the ALJ complied with step one of the process by making written findings on Davis's residual functional capacity.").)

At the second phase of the step four analysis, *Winfrey* requires that an ALJ make findings regarding the physical and mental demands of the claimant's past work. *See Winfrey*, 92 F.3d at 1024 (citing *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)). The ALJ must gather "factual information about those work demands which have a

bearing on the medically established limitations." Social Security Ruling (hereafter "SSR") 82-62; *Id.*

The ALJ found that Plaintiff's past relevant work was as an appointment clerk. He found that Plaintiff could do that job, as generally performed in the national economy, and specifically cited to DOT entry #237.367-010, which describes, in detail, the requirements of this job as generally performed in the national economy. (Tr. 26.) Because the DOT set forth, in detail, the physical and mental demands of appointment clerk, the ALJ met the requirements of the second phase of the step four analysis.

Finally, phase three of the step four analysis requires the ALJ to make findings about the claimant's ability to meet the demands of her past work despite her mental and/or physical impairments. *See Winfrey*, 92 F.3d at 1023. Plaintiff argues that the ALJ, in particular, did not properly conduct this analysis as it relates to Plaintiff's ability to meet the mental demands of appointment clerk.

The court disagrees with Plaintiff's argument. The ALJ acknowledged Plaintiff suffers from a mental impairment when he found, at step two of his analysis, that Plaintiff's severe impairments included anxiety disorder NOS and personality disorder. (Tr. 16.) In evaluating whether Plaintiff's mental impairments met a listed requirement, the ALJ found

> the claimant's degree of limitation in activities of daily living is **mild**. In the second area [maintaining social functioning],

> the claimant has **moderate** difficulty in
> maintaining social contact.  In the third
> area, the claimant has **moderate** limitations
> of concentration, persistence and pace.  And
> in the fourth area, the claimant has
> exhibited **no** episodes of decompensation, each
> of extended duration.

(Tr. 17.)  The ALJ acknowledged that these "B" criteria findings were made to rate the severity of mental impairments at steps two and three of the sequential evaluation process, rather than to be used as an RFC assessment; however, the ALJ also explained that he used this assessment to translate these "B" criteria findings into work-related functions in his RFC assessment.  (Tr. 17.)  The ALJ also devoted over four pages of his opinion to reviewing, in detail, Plaintiff's medical records and testimony.  (Tr. 19-23.)

Part of this recitation of the evidence included discussing record evidence regarding Plaintiff's mental impairments.  (Tr. 22.)  The ALJ noted that Plaintiff underwent a psychological consultative examination by Dr. Ririe because there was no record of previous mental health treatment.  Dr. Ririe noted that Plaintiff drove to the appointment independently; Plaintiff walked independently with no disturbance of gait; and her mental status examination was remarkable for focusing on deficits and problems with strong use of overstatements and hand gestures reflecting anxiety, but otherwise her exam was within normal limits.  (Tr. 22.)  The ALJ noted that Dr. Ririe opined that Plaintiff could handle her own funds, and he diagnosed her with

7

anxiety disorder, NOS, depressive disorder, NOS, chronic post traumatic stress syndrome (provisional), and a borderline personality disorder. (Tr. 22.)  Dr. Ririe gave Plaintiff a global assessment function (hereafter "GAF") of 62.  (Tr. 22.) The ALJ also noted that Dr. Rire stated, in Plaintiff's prognosis, "If Ms. Davis is at all interested in making a positive change in her life, it would be recommended she engage in a course of counseling to specifically address the characterlogical issues she struggles with."  (Tr. 22.)  The ALJ also noted that no records exist reflecting Plaintiff followed this recommendation.  (Tr. 22.)  In addition, the ALJ discounted Plaintiff's testimony regarding her mental and physical impairments, finding it was not entirely credible.

By referring to the DOT entry that specifically lists the mental and physical demands of appointment clerk, and by setting forth the record evidence and properly evaluating that evidence, the ALJ evaluated Plaintiff's mental impairments and was able to conclude, without legal error, that she was capable of performing her past relevant work.  As a result, the court rejects Plaintiff's argument.

  **B. Substantial Evidence Regarding Mental Abilities**

Second, Plaintiff argues that the ALJ's finding at step four, that Plaintiff could mentally return to her past work as an appointment setter, is not supported by substantial evidence.

Plaintiff argues the ALJ failed to acknowledge Plaintiff can only perform unskilled, 1-2 step jobs.  The court has reviewed the examination notes Plaintiff relies upon in making this argument in view of the entire record and the ALJ's decision.  The ALJ acknowledged the limitations listed by these doctors; however, in reciting the record evidence, in making his credibility assessment of Plaintiff's testimony, and in evaluating opinion evidence and state agency opinions, the ALJ explained that the evidence supported a finding that Plaintiff could perform semi-skilled work as opposed to only unskilled work.  (Tr. 18-26.)  In addition, the report that mentions Plaintiff can perform 1-2 step jobs more specifically gave Plaintiff some "moderate" mental limitations, and other "not significantly limited" mental limitations.  (Tr. 221-23.)  The ALJ explained that he "d[id] not find it relevant to address the possibility of multiple moderate mental limitations as identified by the State Agency review physicians, as the State Agency concluded the claimant was capable of engaging in substantial gainful activity even with the multiple moderate mental limitations."  (Tr. 26.)  Thus, the ALJ actually relied on the State Agency in concluding the moderate mental limitations would not prevent Plaintiff from engaging in substantial gainful activity.

Based on her argument that she is limited to unskilled, 1-2 step jobs, Plaintiff also argues the ALJ failed to resolve

conflicts between the VE's testimony and the Dictionary of Occupational Titles (hereafter "DOT"). However, as discussed above, the ALJ found Plaintiff could perform semi-skilled work and he did not find Dr. Sullivan-Sakaeda's limitations to be supported by the record or to preclude Plaintiff from engaging in substantial gainful work. Plaintiff further argues that the VE's testimony that the hypothetical individual could perform the job of appointment clerk with a limitation to low public contact was also inconsistent with the DOT; however, the VE explained that with a limitation to low public contact, the number of appointment clerk jobs as generally performed would be reduced to 24,000. (Tr. 26, 396-98.) Finally, Plaintiff's argument that the ALJ erred by not adopting the evidence the VE gave based on Plaintiff's counsel's own definition of moderate is also without merit; the ALJ was not required to adopt Plaintiff's counsel's definition of "moderate," a definition that did not come from an official source. As the ALJ explained, "the agency did not define what it meant by 'moderate,'" so the ALJ was adopting the Agency's explanation that Plaintiff's "moderate" mental limitations would not preclude her from engaging in substantial gainful activity. (Tr. 26.)

### C. Substantial Evidence Regarding Physical Abilities

Third, Plaintiff argues the ALJ's finding that Plaintiff can physically return to her past work as an appointment setter is not supported by substantial evidence.

Plaintiff argues that the ALJ's finding that Plaintiff can perform "frequent" reaching, fingering, and handling was not supported by substantial evidence.  Plaintiff bases her argument on her testimony at the administrative hearing, which the ALJ did not find entirely credible.  (Tr. 23-25.)  The ALJ decision in this regard is also supported by substantial evidence.  While Plaintiff underwent bilateral carpal tunnel release surgery in May 2001 (Tr. 133-34), there was no further medical evidence pertaining to this impairment after that date.  Dr. Witbeck, a state agency physician, reviewed the medical evidence in May 2005 and found that Plaintiff had no established manipulative limitations.  (Tr. 192-99.)  Indeed, in July 2005, Plaintiff stated that she put dishes in the dishwasher, worked on her computer for two hours, prepared sandwiches for lunch, folded laundry, and crocheted/made crafts for an hour per day.  (Tr. 110-14.)  In September 2005, she told Dr. Ririe that she sat at her computer for an hour in the morning, crocheted, worked on crafts/hobbies, prepared sandwiches, and did laundry.  (Tr. 200-05.)  Such activities were inconsistent with significant manipulative limitations.  Thus, because the ALJ found Plaintiff's testimony was not credible, and because substantial evidence in the record supports the ALJ's finding, the court concludes Plaintiff's argument lacks merit.

Finally, the court has carefully reviewed the ALJ's decision in light of the administrative record and the parties' pleadings.

11

Having so done, the court concludes that the ALJ's decision is supported by substantial evidence.  As a result, the court rejects Plaintiff's argument that the ALJ's decision at step four was legally erroneous and not supported by substantial evidence.[2]

## CONCLUSION

Based on the above analysis, **IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED** because it is supported by substantial evidence and is free of reversible legal error.  As a result, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Modify the Administrative Decision (Docket Entry #15) is **DENIED.**

DATED this 23rd day of September, 2009.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge

---

[2] Plaintiff also argues that application of the medical-vocational rules directs that she should be found disabled if she cannot perform her past relevant work.  Because the court concludes the ALJ's decision that Plaintiff can perform her past relevant was supported by substantial evidence and was free of reversible legal error, the court does not address this argument.